## McDonald *v.* Cooper.

*(Circuit Court, D. Oregon.* November 28, 1887.)

1. WRIT—PUBLICATION—AFFIDAVIT.
    An affidavit for an order for service of summons by publication must contain some evidence having a legal tendency to prove that the defendant could not be found in the state after due diligence, and the mere assertion of the fact is insufficient.
2. SAME.
    But a statement of facts as to residence and actual abode of the defendant, which shows, beyond a peradventure, that any search for him within the state would be unavailing, is sufficient.
3. SAME.
    And where it is necessary to show that the defendant has property in the state, the statement thereabout should be direct, and specify the property.
4. SAME—PUBLICATION.
    A summons published six times in a weekly newspaper is thereby served on the defendant after 42 days from the date of the first publication thereof.

*(Syllabus by the Court.)*

Action to Recover Possession of Real Property.
*W. Scott Beebe,* for plaintiff.
*Julius C. Moreland,* for defendant.

DEADY, J.   This action is brought by Angus McDonald, a citizen of California, by his guardian, D. C. McDonald, against William Hammond, J. Abbott, G. M. Haines, and R. Clinton, citizens of Oregon, to recover possession of lots 1 and 2, in block 120, in Stephens' addition to East Portland.

The answer of the above-named defendants admits they are in possession of the premises, but only as the tenants of George Cooper, without giving his place of residence, who they then volunteer to state is the "owner" of the premises, and ask that he may be substituted as defendant.

A person in possession of real property, as the tenant of another, may decline to make a defense to an action to recover possession of the same, and plead "that he is in possession only as tenant of another, naming him.and his place of residence." But he is not authorized to say that such other .is the "owner" of the premises, or to ask that he may be substituted as defendant. Having declined the controversy, he should be silent as to the merit or management of it.

The landlord may thereupon apply to be made defendant in the case; and if he does not do so, he may be made defendant on motion of the plaintiff. Code Civil Proc. § 314.

Within 10 days thereafter the defendant, George Cooper, appeared and answered the complaint, denying all the material allegations therein. The answer also contains a defense, denominated therein "a further and separate answer," to the effect that Cooper is the owner in fee-simple of the premises, and entitled to the possession thereof. The plaintiff replied to this defense, denying the same.

The case was submitted to the court, without the intervention of a jury, on an agreed state of facts, from which it appears that the plaintiff was 11 years old last July, and is a citizen of California, and D. C. McDonald is his guardian *ad litem;* that the plaintiff is the only child of A. C. McDonald and Hortense, his wife, the former of whom died intestate in Multnomah county, and no administration was ever had on his estate; that on March 2, 1878, the deceased being the owner of the premises, executed, with his wife, a mortgage thereof to B. Boeschen to secure the payment of $175, with interest, and that only $50 thereof was paid; that on August 26, 1879, said Boeschen commenced a suit in the circuit court for the county of Multnomah against said Hortense and ——— McDonald, as the only child and heir of the deceased, to enforce the lien of said mortgage and the payment of the sum thereby secured; that in said suit a decree was given for the payment of the sum found due the plaintiff, and for the sale of the premises to satisfy the same, with costs; in pursuance of which they were sold by the sheriff to said Boeschen for sufficient to satisfy the decree; that said sale was duly confirmed by the court, and a deed of the premises made by the sheriff to the purchaser,

under whom the defendant holds by a chain of mesne conveyances duly executed.

It is also stipulated that if the proceedings in said suit by Boeschen had the effect to divest the plaintiff of his right to the premises, the same is now vested in the defendant.

The invalidity of the decree on which the property was sold is urged on various grounds, either of which, it is claimed, is sufficient to show that the court had no jurisdiction to make the same.

The summons in the case was served by publication. The affidavit on which the order of publication was made was sworn to on August 25, 1879, and the suit was commenced by the filing of the complaint on the twenty-sixth of the same month. On the subject of the residence of the defendants, and the diligence used to find them within the state, the statement in the affidavit is as follows: "They [the defendants] cannot be found within the state of Oregon, but both reside in San Jose, California, and that is their post-office address." As to whether the defendants, or either of them, had any property within the state at the commencement of the suit, the statement of the affidavit is that the plaintiff therein "has a good cause of suit against defendants to foreclose a certain mortgage on real property situate * * * in Oregon, executed by the defendant, Hortense McDonald, and her then husband, A. C. McDonald."

The suit was commenced against Hortense McDonald and ———— McDonald, and the summons is so entitled and addressed. The order for publication does not find that the defendants, or either of them, had any property in this state at the commencement of the suit, or that any diligence was used to find them therein, but simply states "that personal service cannot be had upon said defendants, or either of them, in this state," and directs that service of the summons be made on each of the defendants by the publication thereof in a certain newspaper, weekly, for six successive weeks, "and that a copy of the complaint and summons be deposited in the post-office, directed to each of said defendants at San Jose, California, their post-office address."

It appears from the record that the summons was published as directed, and a copy of the complaint and summons was timely deposited in the post-office at Portland, addressed to Hortense McDonald, at San Jose, California, and another to ———— McDonald in care of Hortense McDonald.

The contention of the plaintiff is that the court never acquired jurisdiction of the defendants, and therefore the decree directing the sale of the premises is null and void. Several of the objections will not be considered,—as that the affidavit for the order of publication was made the day before the commencement of the suit, that the plaintiff was sued as ———— McDonald, and the summons was so issued and published, and that the order of publication did not direct the copy thereof to be deposited in the post-office as required by Code Civil Proc. § 56, "forthwith." The objection that the decree was given without the publication of the summons, as directed in the order, is not well founded. The

summons was published six times in six successive weeks as directed, and more than 42 days elapsed from the first publication to the entry of the decree.

And finally, it is contended that the order of publication is void on either of the following two grounds: (1) The facts stated in the affidavit do not tend to show that any diligence was used to find the defendants within the state, or that they could not have been found and served therein. (2) The facts so stated do not tend to show that the defendants, or either of them, then had any property within the state.

Code Civil Proc. § 55, provides that when the service of a summons cannot be made as provided in section 54,—personally or at his usual place of abode,—"*and the defendant, after due diligence, cannot be found within the state,* and when that fact appears by affidavit to the satisfaction of the court or judge thereof, * * * and it also appears that a cause of action exists against the defendant, or that he is a proper party to an action relating to real property in this state, such court or judge * * * shall grant an order that the service be made by publication of a summons, * * * when the defendant is not a resident of the state, *but has property therein,* and the court has jurisdiction of the subject of the action."

The order of publication in question was made under this section. That diligence has been used to find the defendant within the state must appear from the affidavit, and a mere statement or assertion therein that the party is a non-resident thereof is not sufficient. Nor is such statement or assertion that diligence has been used, a compliance with the statute. The affidavit must contain some evidence of the ultimate fact, besides the assertion of the affiant, on which the judicial mind may act in granting the order. And however slight and inconclusive this evidence may be, if it has a legal tendency to prove the diligence, and that the defendant could not be found in the state, it is sufficient to give the court jurisdiction, and sustain the order against a collateral attack. But where there is no evidence of such diligence except the bald assertion of the fact, or that of non-residence, the order is void, and the court does not acquire jurisdiction. *Rickertson* v. *Richardson,* 26 Cal. 153; *Forbes* v. *Hyde,* 31 Cal. 350; *Carleton* v. *Carleton,* 85 N. Y. 314; *Neff* v. *Pennoyer,* 3 Sawy. 288.

In *Carleton* v. *Carleton, supra,* it was held that an affidavit for the service of a summons by publication was insufficient, wherein it was stated "that defendant has not resided in New York since March, 1877, and deponent is advised and believes is now a resident of San Francisco, California," because it was merely an allegation of non-residence, and did not tend to prove that the defendant could not, after due diligence, be found within the state. In delivering the opinion of the court MILLER, J., said:

"Cases may arise where the proof of residence in a distant state at the very time, and of an absolute location there, would be so strong and conclusive as to render it entirely apparent that no act of diligence would be of any avail; and if the affidavit here had stated positively and distinctly that the defend-

ant was at the time not only a resident of the state of California, *but was then actually living in that state*, there would be ground for claiming that due diligence would be unavailing."

In *Kennedy* v. *Trust Co.*, 101 N. Y. 487, 5 N. E. Rep. 774, it was held that an affidavit for a similar purpose was sufficient, in which it was stated "that the defendants 'cannot, after due diligence, be found within the state,'—they being residents of other states therein named,—and 'that the summons herein was duly issued for said defendants, but cannot be personally served on them by reason of such non-residence.'" In delivering the opinion of the court, MILLER, J., said:

"Here is a clear statement that the defendants are non-residents, and reside in other and *distant* states, and that the summons which has been issued cannot be served by reason thereof. * * * The statement as to due diligence is not absolutely an allegation of a conclusion of law or an opinion, but, in connection with what follows, a statement of facts which tend to establish that due diligence has been used."

In *Pike* v. *Kennedy*, 15 Pac. Rep. 637, decided in the supreme court of this state on November 15, 1887, it was held, on the authority of the last two cases, that the following affidavit was sufficient in this respect:

"That said defendants reside at Walla Walla, in the territory of Washington, which is their post-office address; that personal service cannot be made on said defendants, or either of them, for the reason that said defendants have departed from this state, and remained absent therefrom for more than six consecutive weeks, and *now* reside at Walla Walla."

LORD, C. J., in delivering the opinion of the court, said:

"As we have seen, non-residence is not of itself sufficient to authorize the order for publication, because that alone is not inconsistent with the idea that the defendant may be in the state doing business, although his residence is in another state, and hence would not relieve of the necessity or requirement of due diligence. But the allegation of non-residence, in connection with the facts additionally alleged, that he was *actually living* in the resident state, would be ground for claiming that due diligence would be unavailing.

"The allegation of non-residence is specific and certain in the affidavit,— the defendants reside at Walla Walla, Washington territory, and that is their post-office address. *But this is not enough*, and the inquiry now is whether the further statement, taken in connection with the averment of non-residence, that personal service cannot be made on the defendants for the reason that they have departed from the state, and remained absent therefrom, for more than six consecutive weeks, and *now* reside at Walla Walla, show such a state of facts as render it apparent that no act of diligence would be of any avail to find them within the state. It seems to me that these averments, taken together, are legal evidence tending to show, at least, not only non-residence, but actual absence from the state at the time when the affidavit was made. * * * The averment that the defendants now reside at Walla Walla, means at this time, or at the present moment, they live or reside at that place; that is to say, that when the affidavit was made they were then living in Walla Walla. It is intended to emphasize the fact of *actual presence* at the place of residence at the time alleged, and is the reason why the affidavit says that personal service cannot be made upon them within the state."

These New York cases and this Oregon one are the only authorities of which I am aware that hold that any state of facts concerning the de-

fendant's whereabouts may be stated in the affidavit in place of the showing which the statute expressly requires,—that "the defendant, after due diligence, cannot be found within the state." But the ruling having been followed by the supreme court of the state, the decision is a controlling authority in this court on the question.

The case of *Pike* v. *Kennedy* carries the doctrine of the New York cases to the very verge. But notwithstanding this, the court does not intend to enlarge the rule, for it expressly says that the averment that the defendants *reside* at Walla Walla, and that is their post-office address, "is not enough." The facts stated must show beyond a peradventure that the diligence required by the statute would have been unavailing. So long as they are consistent with any other hypothesis, they are insufficient.

In this case, the statement is that the defendants "cannot be found in the state of Oregon, but both reside in San Jose, Cal., and that is their post-office address."

In *Pike* v. *Kennedy* the court says explicitly this "is not enough." Notwithstanding this statement, it may be true that the defendants, or one of them, could have been found in this state at that time. San Jose is in the immediate vicinity of San Francisco, the commercial metropolis of an adjoining, not a "distant," state, between which and this city there was then constant and frequent communication and intimate business and social relations. No summons was attempted to be served; nor is it stated that the defendants, or either of them, had departed from this state, or were then "actually living" at San Jose.

The affidavit is certainly fatally defective in this particular.

It must also appear from the affidavit that the defendant has "property" in this state. The bare assertion that the defendant has such property is not sufficient. Some fact or facts must be stated tending to establish this conclusion on which the judicial mind may act.

Nothing of the kind is set forth in this affidavit. And it is very doubtful if what is said, even indirectly, amounts to such an assertion. The statement is only to the effect that the plaintiff has a cause of action against the defendants to foreclose a mortgage on property within the state, executed by the defendant Hortense McDonald, and her then deceased husband, and that the defendants were his heirs at law.

Admitting, what may be implied from the execution of the mortgage, that A. C. McDonald then owned the property, it did not follow by any means that his widow and child owned it near a year thereafter, or even that he died seized of the same. He might have disposed of it by deed in his life-time or by will at his death, and, in case it had descended to the defendants, they might have disposed of it in the mean time. There is but one expression in the whole statement that is not perfectly consistent with the hypothesis that the defendants had then no interest in the property, and that is, the plaintiff has a cause of suit against the defendants to foreclose a mortgage on real property.

If the defendants had no interest in the property, the plaintiff could not maintain a suit against them on account of said mortgage, though he

might attempt to. At most this is a mere indirect, argumentative way of asserting that the defendants had property in this state. But if it was positive and direct, it was not enough, in my judgment. There should have been evidence in the affidavit that the defendants had some interest in some specific property, and this is altogether wanting.

The defendant insists that reference may be had on this point to the verified complaint on file when the order was made. In *U. S.* v. *Walsh*, 1 Deady, 282, it was held that a verified complaint in an action for a penalty is an affidavit on which a writ of arrest may issue; and in *Neff* v. *Pennoyer*, 3 Sawy. 291, it was held that an order for the service of a summons by publication might be sustained by a reference to the verified complaint on file when it was made, unless it appears that the attention of the judge was not attracted to it.

The complaint in this case does specify the property on which the mortgage was given as lots 1 and 2, in block 120, in Stephens' addition to East Portland.

But the order was made at Astoria, 100 miles away from the files of the court where the complaint was lodged; and it expressly states that it was " based" on the affidavit. On this state of facts the validity of the order must be tested by the statements contained in the affidavit alone.

This question was also considered in *Pike* v. *Kennedy*, and it appears to have been held that a statement in the affidavit to the effect that Pike and wife mortgaged lot 8, in block 183, in Couch's addition to Portland, to secure the payment of a sum of money to Klosterman Bros., to enforce the lien of which mortgage the suit was brought, was a sufficient showing that the defendants had property in the state when the affidavit was made. The court says these facts show that the defendants "did have property in the state." Yes; when they executed the mortgage, of course, but how long after? Until the affidavit is made? I doubt it. In support of this conclusion the affidavit for an order of publication in *Belmont* v. *Cornen*, 82 N. Y. 257, is professedly cited, as containing only a similar statement to that in *Pike* v. *Kennedy*. But, on examination of the former case, it will be found that the affidavit also contains the statement that the "defendants are proper parties to said action, *as owners of the equity of redemption in said premises;*" and further "that the said defendants *have property within this state*, to-wit, the said mortgaged premises hereinbefore referred to."

However this may be, the affidavit in *Pike* v. *Kennedy* specified the property that was the subject of the mortgage and the suit, but in this it does not.

Counsel for the defendant, admitting the insufficiency of the affidavit in these respects, contends that the suit to foreclose the McDonald mortgage was a suit *in rem*, and that the jurisdiction of the court did not depend on the validity of the proceeding to authorize the publication of the summons, but on the fact that the property was within the state, and the plaintiff had a lien thereon; citing *Cooper* v. *Reynolds*, 10 Wall. 308, and *Pennoyer* v. *Neff*, 95 U. S. 714.

In the former case, the effect of a judgment given in an action commenced by attachment of property, with notice to absent owners, was considered. The court held that the seizure of the property on attachment gave the court jurisdiction, and that its judgment could not be collaterally attacked, on the ground of the irregularity or insufficiency of the notice. In the latter case the effect of a personal judgment against a non-resident defendant, who did not appear to the action, and was not served with process therein, otherwise than by the publication of a summons, was considered, and the judgment declared void for want of power in the state to give extraterritorial operation to its process.

In the course of the opinion of the court delivered by Mr. Justice FIELD, it is said that, notwithstanding the conclusion there reached, a state had authority to take and appropriate the property of non-residents situated within its limits, to the payment of the claims of its own citizens against them. But this state has not authorized the lien of a mortgage to be enforced by attachment or seizure of the property in the case of a non-resident mortgagor or his successor in interest, and when it does it will be time enough to consider the effect of any cautionary or auxiliary notice that the law may require to be given of the proceeding. In the mean time, the only remedy given to the mortgagee is by an ordinary suit to enforce the lien of his mortgage by a sale of the premises, the foundation and jurisdictional element of which is an order for the service of the summons by publication.

My conclusion is, the order for publication in *Boeschen* v. *McDonald* is void on the two grounds stated, and the subsequent proceedings therein, including the sale to Boeschen, are null and of no effect.

Of course, it is not a pleasant duty to be compelled to disregard the results of judicial action in another court. But proceedings against absent parties by publication of summons are only allowed by statute, and the security against wrong and oppression which is thereby thrown around them ought to be fairly, if not strictly, enforced.

Nor will the consequence of so doing be very serious in this case. The period within which the lien of the mortgage may be enforced—10 years—has not yet transpired.

The mortgagee may still make his debt, with interest, out of the premises in another suit. Of course, the rise in value of the property will go to the heir; but as this has not cost the mortgagee anything, he cannot complain. In any view of the matter, the child and his heir is entitled to this "unearned increment," rather than the full-paid creditor.

There must be a finding that the plaintiff is the owner in fee-simple of the premises, and is entitled to the possession of the same.