Merrimack
No. 2006-849

CHARLES P. FORSBERG & a.

v.

KEARSARGE REGIONAL SCHOOL DISTRICT

Argued: October 17, 2007
Opinion Issued: December 18, 2007

Charles P. Forsberg, non-lawyer representative appearing by approval of the Supreme Court under Rule 33(2), by brief and orally, for the plaintiffs.

*Soule, Leslie, Kidder, Sayward & Loughman,* of Wolfeboro (*Barbara F. Loughman* on the brief and orally), for the defendant.

BRODERICK, C.J. The plaintiffs, Charles P. Forsberg and eleven other residents of the Kearsarge Regional School District, appeal the Superior Court's (*McHugh,* J.) order denying their petition for declaratory judgment and injunctive relief. We affirm.

The Kearsarge Regional School District (school district) contains the towns of Bradford, Newbury, New London, Springfield, Sutton, Warner and Wilmot. In 1997, the voters of the school district adopted a home rule charter. KEARSARGE REGIONAL SCHOOL DISTRICT CHARTER FOR OFFICIAL BALLOT VOTING (July 1, 1997, revised March 8, 2006) (hereinafter CHARTER). In 2006, the plaintiffs filed a petition for declaratory judgment and injunctive relief, seeking the court's assistance in enabling the parties to amend the CHARTER with respect to the school district budget. In denying their petition, the trial court rejected the plaintiffs' position that the voters "lacked true choice" and have been "unlawfully disenfranchised" as a result of how the CHARTER permits voters to consider its operating budget.

On appeal, the plaintiffs argue that the trial court erred in ruling that the procedure for voting on the operating budget under the CHARTER is neither unlawful nor unconstitutional. They contend that because there is no opportunity at the second session of the annual meeting to vote "no" on the official ballot question, the CHARTER violates Part I, Article 28 of the New Hampshire Constitution, which provides that no tax "shall be established, fixed, laid, or levied ... without the consent of the people." The plaintiffs also argue that the CHARTER is flawed because it does not contain the procedure set out in RSA 40:13, X (Supp. 2007) allowing for a default budget in the event that no operating budget is adopted. We disagree.

"We will not disturb a trial court's dismissal of a petition for declaratory judgment unless its decision is an unsustainable exercise of discretion, or is unsupported by the evidence or legally erroneous." *McGrath v. Town of Canaan,* 147 N.H. 623, 624 (2002).

Pursuant to RSA 197:5-b (1999),

> any school district may vote to raise and appropriate money for the support of schools by official ballot as provided for in RSA 49-D:3, II-a by following the procedures set forth in RSA 49-B. The

school district may also include within its charter a plan for voting by official ballot, pursuant to RSA 49-B and RSA 49-D, on such other warrant articles as the school district may determine.

RSA 49-B:2 (Supp. 2007) provides:

I. Any incorporated town or city ... shall be entitled to exercise the home rule powers recognized by article 39, part first, of the New Hampshire constitution, and implemented through this chapter, to create a charter commission and to present to its voters by referendum a municipal charter, in which they may establish either a town or city government.

II. If the proposed charter denominates the municipality as a town, the charter shall be prepared pursuant to RSA 49-D.

RSA 49-D:1 (2003) provides:

It is the purpose of this chapter to implement the home rule powers recognized by part I, article 39 of the constitution of the state of New Hampshire by providing an outline of optional forms of town government which may be adopted by any municipality pursuant to the process and restrictions set forth in RSA 49-B.

School districts adopting home rule charters are limited to the form of government provided for in RSA 49-D:3, II-a, which is official ballot town meeting. See RSA 197:5-b. RSA 49-D:3 (Supp. 2007) provides that:

Town charters adopted under RSA 49-B and patterned as prescribed by this chapter may adopt a charter providing for one of the following types of legislative bodies:

. . . .

II-a. Official ballot town meeting shall be a variation of the open town meeting which provides for voting on some or all warrant articles, including part or all of the annual town operating budget, by official ballot. In such event, the open town meeting shall be vested only with the limited authority to vote on all matters not voted on by official ballot. When an official ballot town meeting is included in any charter, the provisions of general law relative to town meetings, their warning, the right for petitioned articles at such meetings, and the conduct of such meetings shall apply to the official ballot and open town meeting in all respects. . . . When a charter provides for an official ballot town meeting it shall also specify with precision the budgetary

items to be included on the official ballot, a finalization process for the annual budget, the process for public hearings, debate, discussion, and amendment of questions to be placed on the official ballot, the procedures for the transfer of funds among various departments, funds, accounts, and agencies as may be necessary during the year, and the applicability of the official ballot procedure to special meetings.

Thus, RSA chapter 49-B (2003 & Supp. 2007) establishes procedural requirements for adopting or amending a home rule charter. If the proposed charter is for a town, it must be prepared pursuant to RSA chapter 49-D (2003 & Supp. 2007). RSA chapter 49-D sets forth the form of government. Under an official ballot town meeting charter, "some or all warrant articles, including part or all of the annual town operating budget," are voted on by official ballot. RSA 49-D:3, II-a.

Pursuant to this statutory authority, the school district adopted the CHARTER providing for an official ballot town meeting. The school district's purpose in doing so was "[t]o expand the ability of the voters of the [school district] to participate in the voting process." CHARTER, Article I. Under the CHARTER, the school district's annual meeting is held in two sessions—a deliberative meeting in January, followed by official ballot voting on election day in March. The CHARTER provides that "[school district] voters present and voting at the 1st Session of the Annual Meeting may enter a motion to amend the Proposed Operating Budget. The motion, properly seconded, shall be subject to explanation, discussion, debate and vote." CHARTER, Article VII, A.4. Thus, the voters at the first session of the annual meeting have the power to amend the proposed operating budget figure.

Final action on the operating budget takes place at the official ballot voting in March. Under the terms of the CHARTER:

Upon passage by the appropriate majority vote at the 1st Session, the wording of the Proposed Operating Budget, as amended, shall be placed as a question on the Official Ballot, together with the questions on the Proposed Operating Budgets of the School Board and the [Municipal Budget Committee]. The form of the question to read:

"Shall the voters of [the school district] vote to raise and appropriate as an operating budget, not including appropriations by special warrant articles, one of the following amounts for the purposes set forth in the budget article posted with the warrant. Vote for only: A or B or C.["]

*Id.*, Article VII, A.5. The official ballot, therefore, instructs the voters to pick either the school board's figure, the budget committee's figure, or, if a motion to amend the operating budget amount has been adopted at the first session, the amended budget figure. The CHARTER also provides that "[t]he Proposed Operating Budget shall be finalized by the appropriate majority/plurality of Official Ballot votes on the questions." *Id.*, Article VII, A.6.

■ Under the CHARTER, the ballot question on the operating budget instructs the voters to vote for either the school board's budget, the budget committee's budget or, if the deliberative meeting has voted to amend the operating budget, the amended budget figure. This method of adopting the school budget is permitted under the home rule statute as part of the finalization process for the annual budget. *See* RSA 49-D:3, II-a. The statutes do not require that home rule charters provide for the operating budget question on the ballot to contain only one budgeted figure or be framed as a "yes" or "no" question. Under the CHARTER, the school district's voters *do* have an opportunity to vote "no" on the school budget at the deliberative session of the annual meeting because of the right to amend the operating budget article. If a voter amendment receives a majority vote, the amendment will appear on the warrant at the second session of the annual meeting, along with the budget committee's and the school board's proposed operating budgets.

■ In addition, RSA 40:13, X, which provides for a default budget as an alternative to the school board's or the budget committee's operating budget, does not apply to this school district. The CHARTER was not adopted under the authority granted in RSA 40:13. Rather, the school district adopted the CHARTER under the authority granted in RSA 197:5-b, RSA chapter 49-B and RSA 49-D:3, II-a, as set forth above, none of which requires a default budget.

*Affirmed.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.